## ELIJAH L. MARSHALL

*v.*

## ALFRED W. PERRY *et al.*

1. SPECIFIC PERFORMANCE—*laches.* To have the specific performance of a contract decreed the complainant must have shown himself ready, desirous, prompt and eager to perform on his part. He can not be allowed to lie by an unreasonable time, waiting to see if the contract will prove an advantageous one or not.

2. In June, 1854, three persons purchased a body of land for purposes of speculation. One of them furnished the money for the purchase,—the title was taken in the name of another of them for convenience in selling, and all were to share equally in the transaction upon the reimbursement of the party advancing the money by the other two, in a short time. In September, 1854, one of the parties in interest gave his note for his one-third of the original purchase money, payable three months after date, to him who made the advance. In August, 1859, the maker of this note assigned his interest in the contract to another, the latter assuming the payment of the note, and in December of the same year a new note was given in lieu of the other, which had not been paid, the new note being payable in one year, and an agreement by the assignee and his assignor that if this note should not be paid at maturity, the interest so acquired by the assignee in the lands might be conveyed by the trustee holding the legal title to the payee of the note. This second note also remained unpaid until February, 1869, a period of about nine years, when the assignee mentioned filed a bill for specific performance : *Held,* that after such delay in the payment of the note, the relief was properly refused.

3. LOAN—*what constitutes.* The transaction above mentioned could not be construed as a loan of one-third the purchase money originally advanced, by the party making the advance, to the party who was to have a third interest in the lands upon refunding his portion of the purchase money.

4. RESCISSION—*how evidenced.* Where a party gives his note for an interest in lands held in the name of a third person, and stipulates that if he fails to

19—90 ILL.

290      MARSHALL *v.* PERRY *et al.*      [Sept. T.

Opinion of the Court.

pay the same at maturity, the party holding the legal title shall convey the interest bargained for to the payee of the note on its cancellation and surrender, such note to be left with the holder of the title until due, if the payee on default of payment takes a conveyance of the title and leaves the note in the hands of the custodian, subject to the order of the maker, this will show sufficiently a rescission of the contract of sale on the part of the payee of the note.

5. CONTRACT—*can not be changed except by the consent of all.* A parol contract respecting lands, can not be changed by a portion of the parties interested in it, so as to affect the rights of those not assenting thereto, even by giving a written statement of its terms, but the original contract will prevail.

APPEAL from the Circuit Court of Mercer county; the Hon. GEORGE W. PLEASANTS, Judge, presiding.

Mr. BENJ. C. TALIAFERRO, for the appellant.

Mr. C. DUNHAM, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill in equity, founded upon a memorandum in writing, as follows: (A list of lands preceding it.)

"This is to certify that I did, on the 17th and 23d days of June, 1854, enter the above lists of lands at the land office in Dixon, in my name, for the mutual benefit and interest of Wm. Marshall, Jr., of Cordova, Bates and Spaulding, of Geneseo, and myself, each, viz: Mr. Marshall of one part, Bates and Spaulding of one part, and myself, all entitled to one undivided third of proceeds or title of an undivided third of the above land.

ALFRED W. PERRY."

The bill was brought by Elijah L. Marshall, as assignee of the writing, against Perry, Bates and Spaulding, to enforce a conveyance of an undivided one-third of the unsold portion of the lands, and an accounting for the one-third of the proceeds of such of the lands as had been sold. Upon final hearing the bill was dismissed, and the complainant appealed.

It appears, from the evidence in the case, that William Marshall furnished the list of the lands for entry; that all the

parties named in the writing went upon the lands together and examined them; that Bates & Spaulding furnished all the money for the entry of the lands; that they were all entered at the land office by Perry in his own name, for convenience in the transfer of title. Perry and Marshall were to have each, one-third of the lands upon each paying one-third of their cost, in a short time. On the 8th day of July, 1854, Perry conveyed to Bates & Spaulding one undivided third of the lands, but the deed was not recorded in order that Perry might still sell and convey as apparent owner of record. About the middle of July, 1854, Perry gave to William Marshall the memorandum in writing above, it bearing no date. September 16, 1854, William Marshall gave to Bates & Spaulding a note, as follows, on account of the one-third of the cost of the lands:

*" Geneseo, September* 16, 1854.

Three months after date I promise to pay to Bates & Spaulding, or order, $666.66, with interest at ten per cent, value received.

WM. and GEO. MARSHALL."

Upon the back of the memorandum in writing is the following assignment:

" I hereby transfer and assign all my right, title and interest of the within lands to Elijah L. Marshall, Keithsburg, Mercer.

*Cordova, August* 1, 1859.     WM. MARSHALL." [seal.]

On December 1, 1859, George Marshall, a brother of William Marshall, took up the note of $666.66, and gave in its place to M. D. Spaulding, of the firm of Bates & Spaulding, (Spaulding having bought out the interest of Bates) a note, as follows:

"$1096.05          *Geneseo, December* 1, 1859.

One year after date, for value received, we promise to pay to M. D. Spaulding or bearer, $1096.05, with ten per cent annual interest after date, at the Bank of Geneseo.

WM. and GEO. MARSHALL."

—It being made up of the principal and interest of the former note.

At the same time George Marshall gave to Spaulding the following instrument in writing:

"We hereby agree with M. D. Spaulding that we will pay him a certain note dated with even date of this agreement, and due in one year from date, payable at the Bank of Geneseo, and if said note is not paid at maturity we hereby authorize him to receive a deed from Alfred W. Perry to an undivided third of certain lands entered by said Perry in 1854, in Mercer and Henry counties, in which said Perry, Spaulding and ourselves are equally interested, conditioned upon the payment of the money due, for which the above note was given, as far as our interests are concerned. The above mentioned note to be left in the possession of the said Alfred W. Perry, and if paid by maturity the note to be canceled and the deed for one-third interest in said lands to be made to us, and if said note is not paid at maturity, we hereby order said Perry to deed the interest we claim to said Spaulding upon the cancelling and returning of our note to us.

WM. and GEO. MARSHALL.

*December* 1, 1859."

There is a dispute and conflict in the testimony, as to whether William and George Marshall were in partnership and George authorized to give the note and contract which he did of the date of December 1, 1859. It is also claimed, by the appellant, Elijah L. Marshall, brother of William Marshall, that he was an innocent purchaser for a valuable consideration of the interest of William Marshall in the lands by and under the assignment to him of the date of August 1, 1859, and that he is not to be affected by the subsequent transaction between Spaulding and George Marshall on December 1, 1859, it being without his knowledge or consent; whereas appellant maintains the evidence shows the assignment was ante-dated, and was, in fact, made at some time subsequent to December 1, 1859.

In the view we take of the case, it is not important to determine these questions, for, however may be the facts respecting them, we are of opinion that the appellant is not entitled to maintain this bill, by reason of the *laches* and neglect of himself and his brother William.

Appellant admits, in his evidence, that by the agreement in pursuance of which the assignment of said written memorandum was made to him, he was to pay the note of $666.66 given by William Marshall for his portion of the purchase money of the lands. This note was given in September, 1854, payable in three months. The bill was filed February 2, 1869. The lands were all bought in June, 1854, with the money of Bates & Spaulding, and yet, there has never been paid by either William or the appellant one cent of William's portion of one-third of the purchase money of the lands. All that is claimed to have been paid by either of them in any way whatever on account of the land is, the taxes for the years 1855 and 1856, on the lands in Mercer county, amounting to some ninety dollars. How can appellant expect to successfully assert in equity a claim of right in the lands, after having so long lain by without payment of any of the purchase money? This is, in effect, a bill for the specific performance of a contract, and, as in the case of such a bill, so here, appellant should have shown himself " ready, desirous, prompt and eager " to perform on his part. 1 Story Eq. Jur. § 776. From the time of the date of the assignment of the memorandum to appellant, August 1, 1859, appellant paid no attention to the lands, nor was there a word of communication between himself and Spaulding or Perry in regard to them or any payment on account of them, until January 1, 1869, when, on the eve of commencing this suit, appellant's attorney wrote a letter of inquiry to Perry in regard to the land. On January 5, 1861, soon after the falling due of the last note for $1096.05, given December 1, 1859, Perry conveyed to Spaulding the one-third of the lands which William Marshall would have been entitled to, had he paid for them, and although that note was not can-

celed and surrendered up to William or George Marshall, the evidence shows that it has, ever since, remained in the hands of Perry for the Marshalls, subject to their order. We think this shows enough on the part of Spaulding in the way of rescinding the contract under such agreement of December 1, 1859.

A motive might be found for the neglect and inaction on the part of the Marshalls, in the evidence that the value of a one-third interest in the lands up to 1866, was not equal to the note of $666.66 and interest.

If, from the rise in the value of the lands after that time, the investment turned out to be an advantageous one, it is too late for appellant after that event to come forward with the purchase money and lay claim to a share of the profits.

It would be unjust, all the risk having been with the appellees who paid down their money, and none on the part of the Marshalls, who had paid nothing. The law does not allow one thus to wait and speculate upon the chances of a rise in value, and make payment or not according as the result may show the purchase to be a profitable one or otherwise.

The delay here is entirely unexplained by any equitable circumstances. The only attempted excuse for the neglect of payment is, that the note might be paid out of the proceeds of the sale of the lands as they were sold, and appellant trusted to that being done. Appellant had no right to rely upon any such expectation.

Nothing was said or done to encourage it, and the evidence shows, that there was not, in fact, realized from one-third of the sales, an amount sufficient for the payment of the note of $666.66 until some time after 1866; indeed, as we understand the evidence, all the receipts from sales up to that time not being enough to meet the disbursements for taxes, etc., on account of the lands subsequent to their purchase.

It is claimed, by appellant, that there was a loan here of one-third of the purchase money by Bates & Spaulding to William Marshall. The only witnesses to the original transaction of

the purchase of the lands were, Spaulding, Alfred W. Perry, his brother David Perry, and William Marshall.

The Perrys and Spaulding testify, that Bates & Spaulding rejected the idea of making any loan of money; that the latter furnished all the purchase money, and the lands were to be entered in the name of Alfred W. Perry, he and William Marshall to have each one-third interest upon the condition that they paid one-third of the cost of the purchase in a short time, Spaulding says three months, and the Perrys, or one of them, say six months—this being the only point of difference in their testimony.

Spaulding says that Marshall not being ready to pay at the end of three months, he gave an extension of time of three months longer, and took from Marshall the note of September 16, for $666.66 at three months. The evidence is, that several unsuccessful applications for payment of this note were made up to December 1, 1859,—Bates & Spaulding up to then preferring the money to the land—at which last date, the note for $1096.05 was given by George Marshall at one year, upon the express agreement, that if not paid at maturity, the Marshalls were to have no interest in the land. The note not being paid at maturity, soon thereafter, on January 5, 1861, Perry conveyed to Spaulding the one-third Marshall interest as provided should be done by the last named agreement. This was accepted and acquiesced in by all the parties as the termination of all interest of the Marshalls in the land—so far as that could be manifested by the entire absence of anything being said or done—until January 1, 1869, the date of the letter from appellant's attorney.

We see no case here of a loan of money.

It is further insisted, that the written memorandum given by Alfred W. Perry is conclusive evidence of an absolute interest in the land in William Marshall, or should be held an estoppel to claim the contrary, especially as against the appellant, an innocent purchaser.

This memorandum was not made at the time of the pur-

chase, but about a month afterward, and it is shown to have been without the knowledge or consent of Bates & Spaulding.

Perry was authorized merely to make sales of the lands. He had no authority to change or affect the rights as they existed between Bates & Spaulding and Marshall, or to make any writing or contract showing the interest of Marshall in the lands to be anything different from what it was in fact.

The actual contract which was made between Bates & Spaulding and Marshall, although it was oral, must prevail, unaffected by this memorandum. Appellant, taking the assignment which he did, acquired no greater rights than his assignor, William Marshall, possessed, but took subject to all equities as against the latter, and expressly assumed his obligation to pay his share of the purchase price.

Finding no error in the dismissal of the bill, the decree is affirmed.

*Decree affirmed.*